ROS.24356

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **LEASA AND BRET WILLIAMS,** | § | |
|   **Plaintiffs,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 4:19-cv-00872-Y** |
| | § | |
| **ROSS STORES, INC.,** | § | |
|   **Defendant.** | § | |

### DEFENDANT'S OBJECTIONS AND REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**TO THE HONORABLE JUDGE OF SAID COURT:**

Pursuant to FED. R. CIV. P. 56, Defendant **ROSS STORES, INC.** ("Defendant") files this *Reply to Plaintiffs' Response to Defendant's Motion for Summary Judgment*, and in continuing to move the Court to enter a summary judgment dismissing all claims and causes of action of Plaintiffs **LEASA WILLIAMS** (referred to individually as "Plaintiff") and **BRET WILLIAMS** (collectively "Plaintiffs"), would show:

### I.  OBJECTIONS TO EVIDENCE

Defendant objects to the Declarations of both Plaintiffs as well as the report of Stephen Melia.

Defendant objects to the Declaration of Brett Williams for several reasons. First, the Declaration contains information that is not relevant to the issues now before the Court but is presented, presumably, solely for the purpose of improperly swaying the Court's decision on Plaintiff's alleged injuries; an issue not now before the Court. [*See* the first two highlighted paragraphs of B. Williams Dec., Doc. 16, p. 1]. The remainder of the declaration [the third highlighted paragraph] is his interpretation of the deposition testimony and video now before the

Court. This Court is free to make its own decision based on the testimony and video, and Mr. Williams' interpretation of what he believes his wife was testifying to is irrelevant.

Defendant objects to the Declaration of Leasa Williams for several reasons. First, the Declaration contains information that is not relevant to the issues now before the Court but is presented, presumably, solely for the purpose of improperly swaying the Court's decision on Plaintiff's alleged injuries; an issue not now before the Court. [See the first and third highlighted of L. Williams Dec., Doc. 16, p. 2]. Defendant objects to the second highlighted paragraph in Leasa Williams' Declaration as the same is a sham declaration. As noted by the Fifth Circuit Court of Appeals, the courts will not allow a party to defeat a motion for summary judgment using an affidavit that impeaches sworn testimony without explanation. *Benedetti v. Wal-Mart Stores Tex., L.L.C.*, 788 Fed. Appx. 945, 949 (5th Cir. 2019) (citing *S.W.S. Erectors, Inc. v. Infax, Inc*., 72 F.3d 489, 495 (5th Cir. 1996)).

While Plaintiffs have now attempted to manufacture a reason, based on selective amnesia, which allows Plaintiff to recall or forget information on an as-needed basis, Plaintiff's own testimony in her deposition belies the true wrongful intent of the Declaration. As an initial matter, Plaintiffs never filed any pre-deposition motion or protective order indicating that Leasa Williams would be unable to give testimony or unable to give truthful and accurate testimony. Further, there is nothing in her deposition to indicate any inability to testify. In fact, when given the opportunity to be cross-examined, Plaintiff's own counsel took the opportunity to attempt damage control to Plaintiff's testimony. Not by questioning her as to her ability to testify, but suggesting that the video simply got it wrong and that she was not trying to remove the shelving unit ("Shelving Unit") from the display shelf, but simply rearranging it. [Doc. 10-1, p. 9]. Further, Plaintiff did not make any changes to her deposition testimony in the form of an errata sheet or corrigendum. But most clearly proving that Leasa Williams' Declaration is a sham is the very nature of the Declaration

itself. Specifically, on the one hand, she (like her husband) attempts to inform the Court (in highlighted paragraphs 1 and 3 of the Declaration) that the Court should ignore all of her deposition testimony because of her mental issues. But in the middle of the three highlighted paragraphs, she testifies as to her new version of what occurred. This is exactly what the courts want to avoid in excluding sham affidavits – allowing a party to change those parts of their testimony that are unfavorable to their position for the sole purpose of avoiding a summary judgment.

Defendant objects to the Initial Expert Witness Report of Stephen Melia as the same has not been verified or authenticated. Speaking on this very issue, in *Arlington Apartment Inv'rs, LLC v. Allied World Assurance Co. (U.S.) Inc.*, this Court wrote: "Unsworn expert reports do not qualify as affidavits or otherwise admissible evidence for the purpose of Rule 56, and may be disregarded by the court when ruling on a motion for summary judgment." 2014 WL 11514891, at *2 (N.D. Tex. June 3, 2014), *aff'd sub nom. Arlington Apartment Inv'rs, L.L.C. v. Allied World Assur. Co. (U.S.), Inc.*, 612 Fed. Appx. 237 (5th Cir. 2015) (*quoting Provident Life and Acc. Ins. Co. v. Goel*, 274 F.3d 984, 1000 (5th Cir. 2001)); *see also Roberson v. Vehicle*, 2020 WL 533109, at *4 (S.D. Tex. Feb. 3, 2020) ("Unsworn expert reports . . . do not qualify as affidavits or otherwise admissible evidence for [the] purpose of Rule 56, and may be disregarded by the court when ruling on a motion for summary judgment."), *but cf. Patel v. Tex. Tech Univ.*, 941 F.3d 743, 746 (5th Cir. 2019) (expert report need not be authenticated providing that the contents can be presented in an admissible form at trial).

Even if Mr. Melia's report had been properly authenticated, the report would still be excluded as irrelevant and unreliable to the issues now before this Court. First, the issues for this Court's consideration in this Motion go to whether the condition was *unreasonably* dangerous and whether Leasa Williams was aware of the condition or whether the condition was open and obvious. From the standpoint of an expert's opinion therefore, the only issue would be the first

issue; was the condition an unreasonably dangerous condition. As to that, Mr. Melia provides a single conclusion: "Ross Stores should have known that having an unsecured display with moving parts would create an unreasonably dangerous condition to customers wanting to purchase the item." [Doc. 16, p. 10]. But Mr. Melia nor Plaintiff provide any support for that conclusion that would make the alleged expert's opinion reliable. Specifically, Mr. Melia states that he bases his opinion on "generally accepted standards of safety" and the "standard in the retail industry," but provides no evidence of what those standards actually are, who makes the standards, or where the standards exist. *See* FED. R. EVID. 702 (evidence needs to have some reliable basis). In effect, he has created his own standards out of thin air and deemed them as the industry standard; the type of *ipse dixit* opinions rejected by the courts. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 157 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to the existing data only by the *ipse dixit*[1] of the expert."); *see also Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc), *cert. denied*, 526 U.S. 1064 (1999).

Mr. Melia further contends that he cannot provide an opinion on the standards and policies of the Defendant itself as he has not seen those standards. However, Texas courts, including the Texas Supreme Court, have made clear that a defendant's internal rules and policies cannot form the basis for a standard of care. *Mejia-Rosa v. John Moore Services, Inc.*, 2019 WL 3330972, *11 (Tex. App.—Houston [1st Dist.] 2019, no pet. h.) ("[A] company's noncompliance with its own internal procedures does not establish a standard of care for a negligence claim.") (*citing FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 92 (Tex. 2004) ("[Defendant]'s self-imposed policy with regard to inspection of its trailers, taken alone, does not establish the standard of care that a reasonably prudent operator would follow.")).

Finally, Mr. Melia's report is fatally flawed as he makes no attempt to discuss the culpability of Leasa Williams in causing her own injuries. As this Court is aware, an expert's causation opinions will be excluded if the expert fails to address and rule out every possible alternative to a plaintiff's injury. *Dalton v. C. R. Bard, Inc.*, 2020 WL 1307965, at \*5 (N.D. Tex. 2020). The flaw in Mr. Melia's consideration of the evidence is clear in his very subjective presentation of the very objective video of the incident. This begins with his presentation of the photo stills from the incident which particularly exclude Leasa Williams' examination of both the Shelving Unit and the baskets within the unit before the incident. In fact, were a reader to simply read Mr. Melia's version of the incident, the reader would be left with the impression as testified to by Leasa Williams before she was presented with the video evidence; that the Shelving Unit simply fell on her without any intervention by Plaintiff herself. Because Mr. Melia has wholly failed to meet even the most basic requirements for his opinions being considered valid or reliable, his report must be excluded from consideration by the Court.

## II. REPLY

### A. Plaintiffs have failed to establish that the placement of the Shelving Unit on the display shelf was an unreasonably dangerous condition.

Contrary to Plaintiffs' assertion, both in their Motion to Extend Time to Respond [Doc. 11] and in their Response to the present Motion, Defendant has been conspicuous in *not* raising the general issue of knowledge (knew or should have known) in its Motion for Summary Judgment. Rather, the emphasis is on the condition of the premises; *i.e.* even if Defendant was aware the Shelving Unit was on the display shelf, neither the unit, nor its placement on the display shelf constitute an unreasonably dangerous condition.

Plaintiffs ask the Court to look at the Shelving Unit, and the incident, in hindsight, to suggest that the condition was not only dangerous, but unreasonably dangerous. "A condition is

an unreasonably dangerous condition if it presents an unreasonable risk of harm." *Texas Dep't of Transp. v. Padron*, 591 S.W.3d 684, 697 (Tex. App.—Texarkana 2019, pet. denied) ( *quoting City of Killeen v. Cheney*, 2018 WL 5832088, *6 (Tex. App.—Austin 2018, no pet.)). "A condition poses an unreasonable risk of harm for premises-defect purposes when there is a 'sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen.'" *County of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002) (*quoting Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 754 (Tex. 1970)). "[A] condition is not unreasonably dangerous simply because it is not foolproof." *Patron*, 591 S.W.3d at 697 (*quoting Cheney*, 2018 WL 5832088, at *6). Further, as cautioned by the Hon. Jane Boyle, "the fact an accident happens is no evidence that there was an unreasonable risk of such an occurrence." *Hatamieh v. Kroger Tex. LP*, 2018 WL 1014158, at *2 (N.D. Tex. 2018) (*quoting Thoreson v. Thompson*, 431 S.W.2d 341, 344 (Tex. 1968)). As Judge Boyle further noted, "Texas courts have consistently found evidence of an unreasonably dangerous condition insufficient when the plaintiff relies only on the fact that she was injured to demonstrate an unreasonably dangerous condition." *Id*.

In *Thurwanger v. Target Corp.*, 2015 WL 137251 (E.D. Tex. 2015), the court discussed the nature of a condition of the premises that would made it unreasonable. As the court noted, the mere fact that something could have been done in a different manner does not make the condition unreasonably dangerous, "since it is almost always the case that something more could have been done to prevent a customer from being struck by an article falling off a shelf or from slipping on the floor." *Id*. at *3 (*quoting Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 408 (Tex. 2006)). In further relying on the Texas Supreme Court, the court in *Thurwanger* noted that "evidence that an owner or occupier knew of a safer, feasible alternative design, without more, is not evidence

that the owner knew or should have known that a condition on its premises created an unreasonable risk of harm." *Id.* (*quoting CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 101–02 (Tex. 2000)).

The decisions in *Hatamieh* and *Thurwanger* are particularly significant as both stand directly contra Plaintiffs' assertion that the decision as to whether a condition is unreasonably dangerous must be left to a jury. Specifically, in each case, in granting the defendant stores' motions for summary judgment, the courts based their decision on the alleged defective condition *not* being an unreasonably dangerous condition. *Hatamieh*, 2018 WL 1014158 at \*4; *Thurwanger*, 2015 WL 137251, at \*3.

While not wishing to delve too far into the issues addressed below, Defendant would note that before Leasa Williams removed the Shelving Unit from the display shelf, she was already aware that the baskets of the unit – at least the bottom basket – were not attached to the unit. Therefore, from a foreseeability standpoint, if, as Plaintiffs now postulate, the unit was *unreasonably* dangerous, the foreseeability of that condition was, at the least, equally known to both Leasa Williams and Defendant. But for the purpose of an analysis of the present issue – was the placement of the Shelving Unit unreasonably dangerous – Plaintiffs' own argument would indicate to the negative. In other words, a reasonably prudent person would not have foreseen the placement of the Shelving Unit as being unreasonably dangerous prior to the incident because Plaintiff herself did not find it to be dangerous. Again, the issue is not "possibility," but "sufficient probability." As such, Defendant is entitled to a summary judgment.

**B.    Plaintiffs have failed to establish that the condition complained of was not open and obvious and known to Leasa Williams.**

As an initial matter, Plaintiffs' response to this issue speaks directly to the issue of the unreliability of Leasa Williams' sham Declaration. Specifically, during her deposition, and before having been shown the video of the incident, Leasa Williams testified that the basket would not

come out at all; "it was stuck" and wouldn't "budge." [Doc. 10-1, p. 6, depo. pp. 35-36]. She

testified that she thought it was "zip-tied in the back." [Doc. 10-1, p. 6, depo. p. 36]. Now she

contends that she did not know it would come out because even though she did pull it out and even

tip it up to look inside, she was still assuming it was attached. While Plaintiffs ask that this Court

find that every deposition statement contradictory to their claims was made in error because of

Plaintiff's mental condition – a condition that has supposedly rendered her unable to know how to

answer a telephone – they also ask that the Court find that every new bit of fabricated testimony

is believable.

It should be remembered that the issue with Leasa Williams recreating testimony directly

contrary to the video of the incident predates the new Declaration. Specifically, before she was

presented with the video evidence, she vehemently testified that she never attempted to take the

Shelving Unit down. [Doc. 10-1, pp. 6-7, depo. pp. 36-39]. Then her attorney suggested that she

was not attempting to remove the Shelving Unit, but merely straightening it up even while she

testified that "[i]t isn't my nature to straighten things up." [Doc. 10-1, p. 9, depo. p. 68].

But the video evidence is very clear and revealing. Specifically, Plaintiff not only pulled

out the bottom basket, but pulled it out to the end of the Shelving Unit before tipping the basket to

her to look inside. Further, the video shows that before she attempted to remove the Shelving Unit

from the display shelf, Plaintiff examined the unit itself, including holding onto the unit. Further,

the video makes clear that the Shelving Unit was completely stationary until she attempted to

remove the unit from the display shelf.

Most importantly, as noted in Defendant's Motion, the issue is not simply a question of

whether Leasa Williams knew of the condition of the Shelving Unit, but whether she knew **_or_** if

the condition was open and obvious. *Simpson v. Orange County Bldg. Materials, Inc.*, 2019 WL

470090, at *3 (Tex. App.—Beaumont 2019, no pet.) ("[T]he open-and-obvious nature of the

hazard or the invitee's knowledge of the hazard negates the landowner's negligence duty." (*quoting Phillips v. Abraham*, 517 S.W.3d 355, 361 n.2 (Tex. App.—Houston [14th Dist.] 2017, no pet.)). As stated by the court in *Robles v. Ross Stores, Inc*., 2017 WL 2306527 (N.D. Tex. 2017), the duty owed to a customer is to protect against "hidden hazards on the premises." *Id*. at *8.

In the instant cause, the condition of the Shelving Unit was anything but hidden. In fact, Plaintiff did not simply take a cursory look at the unit before taking the unit down from the display shelf. Contrary to her testimony – all of the many versions – she specifically pulled out a basket and tipped the basket forward, with no effort and no indication that it would not come completely out of the unit. That Plaintiff did not completely remove the bottom basket, or that she did not attempt to test all of the baskets before removing the Shelving Unit from the display shelf, does not make the condition hidden. In actuality, the fact that Plaintiff, aware that the bottom basket could be pulled as far as she chose to pull it out indicates that she was aware that the basket could come out. This is the very reason why the courts have consistently found that there is a presumption that an invitee will take reasonable measures for their own safety. *Kennedy v. Wal-Mart Stores Tex., LLC*, 2020 WL 1943357, at *2 (Tex. App.—Austin 2020, no pet. h.) (*citing Austin v. Kroger, L.P.*, 465 S.W.3d 193, 203 (Tex. 2015)). Though Plaintiff has given several different versions of her inspection of the Shelving Unit and the basket, the video speaks for itself. Therefore, if the alleged "unreasonably dangerous condition" was that the baskets were not secure, it was a risk known to Plaintiff. Therefore, she was in the best position to take reasonable measures for her own safety.

## V. CONCLUSION

Plaintiffs have gone to outstanding levels to draw the Court away from the video of the incident; a video which Leasa Williams has testified is a fair and accurate depiction of what occurred prior to and at the time of the incident. Bur as Leasa Williams herself has testified to, she

is mentally unable to provide this Court with an accurate version of what occurred, so this Court is left with what the video shows. This includes the fact that Ms. Williams had examined the Shelving Unit, both as a whole and regarding the pull-out baskets. Further, that the baskets were very clearly not attached in any manner to the unit. Further, that the condition of the Shelving Unit was not an unreasonably dangerous condition. And finally, that even aware of the condition of the Shelving Unit, Ms. Williams took no care when removing the unit from the display shelf.

**WHEREFORE, PREMISES CONSIDERED,** Defendant requests that this Court enter a final summary judgment in its favor and against Plaintiffs upon all claims, and for such other and further relief to which Defendant may be entitled.

Respectfully submitted,

**FLETCHER, FARLEY
SHIPMAN & SALINAS, LLP**

*/s/ Fernando P. Arias*
**FERNANDO P. ARIAS**
**ATTORNEY IN CHARGE**
State Bar No. 24025946
**C. RYAN CURRY**
State Bar No. 24050145
9201 N. Central Expwy., Suite 600
Dallas, Texas 75231
214-987-9600
214-987-9866 fax
fred.arias@fletcherfarley.com
ryan.curry@fletcherfarley.com
**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing instrument was electronically filed via the Court's CM/ECF system and a true and correct copy of same was delivered to all counsel of record in accordance with the FEDERAL RULES OF CIVIL PROCEDURE on this the 11th day of May, 2020.

*/s/ Fernando P. Arias*
**FERNANDO P. ARIAS**